Lewis R. CRIST, Director, Division of Insurance, Department of Economic Development, State of Missouri, as Receiver for Transit Casualty Company, Plaintiff,

v.

J. HENRY SCHRODER BANK & TRUST COMPANY, Defendant and Third Party Plaintiff,

v.

CANDON SYNDICATE N.V., Third Party Defendant.

No. 87 Civ. 1845 (WK).

United States District Court, S.D. New York.

Oct. 14, 1988.

George F. Hritz, Robert B. Murray, Jr., Davis Markel & Edwards, New York City, for plaintiff.

Ronald J. Offenkrantz, Michael H. Smith, Spitzer & Feldman, P.C., New York City, for defendant and third party plaintiff.

James A. Shanman, Sharfman, Shanman, Poret & Siviglia, P.C., New York City, for third party defendant.

MEMORANDUM & ORDER

WHITMAN KNAPP, District Judge.

In our Memorandum & Order of May 3, 1988, 693 F.Supp. 1429, familiarity with which is assumed, we granted plaintiff summary judgment against defendant J. Henry Schroder Bank on letters of credit that were issued, at third-party defendant Candon Syndicate N.V.'s request, in favor of Transit Casualty Company, the insolvent insurance company for which plaintiff is the receiver. We also granted Candon's motion for leave to add an "offset" claim against plaintiff for reimbursement of any amount recovered against Candon on the third-party claim which exceeds the amount Candon actually owes to Transit. Plaintiff had opposed Candon's motion on the ground that injunctions have issued from the courts of Missouri and New York barring actions against Transit's estate outside of the liquidation proceedings currently underway in Missouri. Our rationale for granting Candon's motion was, in part, as follows:

> [A]lthough in certain circumstances principles of comity or abstention might nonetheless warrant observing the state court's injunction, the balance of equities in the instant situation clearly counsels us to allow Candon to assert its claim in the context of this action. Candon will indeed be severely prejudiced if it must reimburse the Bank for the full amount of the letters of credit and then be left to recoup any amount it did not originally owe to Transit in the liquidation proceedings, where it is sure to obtain but pennies on the dollar. Such a scenario seems especially unjust in the face of Candon's assertion that it owes nothing to Transit, an assertion that plaintiff has thus far declined to rebut in any substantial manner. Should the evidence at trial ultimately show that Transit was indeed entitled to draw on the majority of the proceeds of the letters of credit, the equi-

ties might tip back in favor of preserving the integrity of the liquidation proceedings. That would be an appropriate time to reconsider whether Candon's claim should be struck in deference to the state injunctions.

Memorandum & Order of May 3, 1988, at 15–16 (citation omitted).

Plaintiff now moves to dismiss Candon's newly-added claim. In support of this motion, plaintiff has apprised us of steps that he has taken in the Missouri liquidation proceedings to allay our above-stated concerns regarding possible prejudice to Candon. On June 6, 1988, on plaintiff's application, the Circuit Court of Cole County, Missouri ordered plaintiff to deposit the proceeds of this action in "his special Letter of Credit account," to afford both J. Henry Schroder Bank and Candon Syndicate N.V. notice and an opportunity to be heard before disbursement of those proceeds, and to return any amount determined to be in excess of the amount due plaintiff from either of those parties "without any diminution on account of these liquidation proceedings." Exhibit A to Affidavit of Robert Murray, Jr. in support of Motion to Dismiss. The primary effect of the Missouri court's order is thus to eliminate our concern that any recovery by Candon in the Missouri liquidation proceedings would be limited to "pennies on the dollar."

Having addressed that concern, plaintiff bottoms his motion to dismiss on the principles of abstention that flow from *Burford v. Sun Oil Company* (1943) 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, namely, that a federal district court should abstain from exercising jurisdiction over a claim where to do so would interfere with a specialized, unified system of adjudication in the state courts that is designed to avoid inconsistent adjudication of claims arising from a complex state regulatory scheme, where

the subject of that regulatory scheme is one of special state interest, and where the issues to be litigated in federal court primarily involve state law.

In two recent cases, the Second Circuit has applied the principles of *Burford* in affirming the abstention by district courts from claims against New York's Superintendent of Insurance in his capacity as liquidator for insolvent insurance companies. *See Law Enforcement Ins. Co. v. Corcoran* (2nd Cir.1986) 807 F.2d 38; *Levy v. Lewis* (2nd Cir.1980) 635 F.2d 960. Each of those cases stressed Congress' deferral to the individual states in matters involving insurance regulation as embodied in the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015, the state's establishment of a comprehensive system for liquidating insolvent insurance companies, the expertise developed by the state agency and the state courts in overseeing the liquidation proceedings, and the strong state interest in providing a centralized forum for claims against the estate of the insolvent company. *Law Enforcement, supra,* at 43–44; *Levy, supra,* at 963–64. In *Law Enforcement, supra,* at 44, the court found the case for abstention to be even more compelling than *Levy* because of the absence of any issue implicating federal law.

We agree with plaintiff that the same factors which supported application of the *Burford* abstention principles in *Law Enforcement* and *Levy* warrant dismissal of Candon's "offset" claim in this action. New York and Missouri have virtually identical schemes for liquidation of insolvent insurance companies,[1] and thus have identical interests in preserving a unified forum for adjudicating claims against the estates of such companies. Moreover, Candon's claim does not involve federal law, but instead will be governed exclusively by com-

---

1. Both New York and Missouri have adopted the Uniform Insurance Liquidation Act. *See* New York Insurance Law §§ 7408–15 (McKinney's 1985); Mo.Rev.Stat. §§ 375.950–375.990 (West Supp.1988). In this connection, we note the Second Circuit's observation in *Law Enforcement, supra,* 807 F.2d at 44 n. 10: "[B]y relegating claimants to a single proceeding centered in the state of domicile of the insolvent insurer, we further the state policies of uniformity that have led over half of the states to join New York in adopting the Uniform Insurance Liquidation Act."

plex provisions of state law involving contracts for reinsurance.

We do not see a basis for distinguishing *Law Enforcement* and *Levy,* as Candon contends, in the circumstance that it was plaintiff who initiated the present action, out of which Candon's claim has grown, in the federal court in New York. Plaintiff came to New York to vindicate his right to draw on the letters of credit as Transit's receiver, not to litigate the underlying dispute over Candon's reinsurance agreements with Transit. As plaintiff points out, Reply Memorandum at 10:

> [I]f the Bank had not dishonored the letters of credit and had paid the proceeds to Transit, Candon would be in exactly the position it claims is inequitable now—it would have had to honor the agreement with the Bank, and would have had to litigate any dispute on the underlying contract with Transit in the liquidation proceedings in Missouri.

Plaintiff's observation bears one correction: Candon would not have been in "exactly" the same position under that scenario. Indeed, because of our initial concern over possible prejudice to Candon if this claim was relegated to the Missouri court, that court has, on plaintiff's application, emplaced provisions which eliminate such prejudice. Those provisions might not have been as easily obtainable had Candon been just another claimant to Transit's estate. Thus, notwithstanding the fact that our ruling today will force Candon to litigate its claim to the proceeds of the letters of credit in Missouri, Candon has obtained some benefit from initially being drawn involuntarily into this action.[2]

In sum, although we initially allowed the assertion of Candon's "offset" claim against plaintiff in this action, we now exercise our discretion to abstain from further entertaining that claim, in deference to the liquidation proceedings underway in Missouri and the injunctions issued in connection thereto.

2. Of course, if plaintiff can substantiate its assertion that "Candon's liability to the Receiver will in all likelihood far exceed the amount of

## CONCLUSION

Plaintiff's motion to dismiss third-party defendant Candon's cross-claim is granted.

SO ORDERED.

the letters of credit," Exhibit B to Murray Affidavit at 2, such benefit will be largely illusory.